**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | On appeal from the U.S. Bankruptcy Court |
| | ) | for the Northern District of Illinois, Western |
| CHARDON, LLC, *et al.*, | ) | Division, Case Nos. 13-81372 (jointly |
| | ) | administered); 13-83571, and 13-83572 |
| Debtors. | ) | (TML) (Hon. Thomas M. Lynch) |
| | ) | |
| | ) | |
| David M. Wolf, Donald L. Wolf, Sr., and | ) | |
| Donald L. Wolf, Jr., | ) | |
| | ) | Civil Case No. 15-cv-50035 (consolidated |
| Appellants, | ) | with Case Nos. 15-cv-50036 and |
| v. | ) | 15-cv-50037) |
| | ) | |
| FirstMerit Bank, N.A., | ) | |
| | ) | Hon. Frederick J. Kapala |
| Appellee. | ) | |
| | ) | |

## APPELLEE'S RESPONSE BRIEF

Gus A. Paloian (06188186)
M. Ryan Pinkston (6297427)
Christopher J. Harney (6296683)
SEYFARTH SHAW LLP
131 South Dearborn Street, Suite 2400
Chicago, Illinois 60603-5577
Telephone: (312) 460-5000
Facsimile: (312) 460-7000
E-mail: gpaloian@seyfarth.com
       rpinkston@seyfarth.com
       charney@seyfarth.com

*Counsel for Appellant FirstMerit Bank, N.A.*

19530711v.1

## TABLE OF CONTENTS

STATEMENT OF APPELLATE JURISDICTION ....................................................... 1

STATEMENT OF CASE AND RELEVANT FACTS ................................................... 1

SUMMARY OF ARGUMENT ..................................................................................... 2

ARGUMENT .............................................................................................................. 4

I.     The Bankruptcy Court's Orders Are Interlocutory, and This Appeal Should be
Dismissed. ....................................................................................................... 4

     A.     The Bankruptcy Court's Interlocutory Orders Are Not Immediately
Appealable As Of Right. ...................................................................... 5

     B.     The Court Should Dismiss This Interlocutory Appeal Due To The
Individuals' Failure To Obtain Leave Of Court. .................................. 6

     C.     The Individuals Have Not Established And Cannot Establish That The
Court Should Grant The Individuals Leave To Pursue This Interlocutory
Appeal. ................................................................................................. 7

          1.     No controlling question of law is at issue. ................................ 8

          2.     No substantial grounds for difference of opinion exist. ............ 9

          3.     Review of this appeal will not advance termination of this
litigation. ................................................................................. 10

II.     Should The Court Consider This Appeal, It Should Affirm The Bankruptcy
Court's Orders. .............................................................................................. 11

     A.     The Bankruptcy Code Preserves FirstMerit's Undisputed Security Interest
In Cash Collateral (Rental Proceeds) From The Property, And FirstMerit
Is Entitled To Adequate Protection. ................................................... 11

     B.     The Bankruptcy Court Correctly Utilized An Approach To Valuing Cash
Collateral That Recognizes FirstMerit's Interest In Post-Petition Rents. ............. 12

          1.     The Bankruptcy Court correctly rejected the "dual valuation"
approach in favor of an approach that correctly recognizes the
existence of post-petition cash collateral. ................................ 13

          2.     A majority of recent decisions have rejected the valuation
approach espoused by the Individuals. ..................................... 17

          3.     Contrary to the Individuals' rote speculation, the Bankruptcy
Court's Opinion does not violate any policy concerns. ............ 21

C.    The Bankruptcy Court Correctly Determined That The Adequate
         Protection Proposed By The Individuals Was Illusory.......................................... 23

D.    The Bankruptcy Court Correctly Determined That The "Equities Of The
         Case" Exception Does Not Apply Here................................................................ 24

CONCLUSION............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ahrenholz v. Bd. of Tr. Of Univ. of Ill.*,
219 F.3d 674 (7th Cir. 2000) ..................................................................................8

*Bernardi & Assocs. v. I. Kunik Co. (In re Delta Produce)*,
No. 12-MC-1164, 2013 U.S. Dist. Lexis 91570 (W.D. Tex. June 28, 2013) .........10

*Brandt v. Leasing One Corp.*,
No. 14-C-979, 2014 U.S. Dist. LEXIS 62279 (N.D. Ill. May 6, 2014)....................7

*Carugati v. INA Life Ins. Co.*,
No. 97 C 4604, 1997 U.S. Dist. LEXIS 17669 (N.D. Ill. Nov. 5, 1997)................10

*Couch v. Telescope, Inc.*,
611 F.3d 629 (9th Cir. 2010) ................................................................................10

*Dahlquist v. First Nat'l Bank*,
737 F.2d 733 (8th Cir. 1984) ................................................................................17

*Delalla v. Hanover Ins.*,
No. 09-2340, 2010 U.S. Dist. LEXIS 2797 (D.N.J. Jan. 14, 2010).........................9

*Federal Nat'l Mortgage Ass'n v. Dacon Bolingbrook Assocs. Ltd. P'ship*,
153 B.R. 204 (N.D. Ill. 1995) ..........................................................................14, 20

*Hardt v. Reliance Standard Life Ins. Co.*,
560 U.S. 242 (2010)..............................................................................................23

*Havoco of Am., Ltd. v. Hill*,
197 F.3d 1135 (11th Cir. 1999) ............................................................................25

*In the Matter of Mulcahy*,
5 B.R. 558 (Bankr. D. Conn. 1980) ......................................................................19

*In re 450 S. Burlington Partners LLC*,
No. 09-4097, 2009 U.S. Dist. LEXIS 126750 (C.D. Cal. Aug. 5, 2009)..............6, 8

*In re Addison Properties L.P.*,
185 B.R. 766 (Bankr. N.D. Ill. 1995) ............................................................ *passim*

*In re Alchar Hardware*,
730 F.2d 1386 (11th Cir. 1984) ..........................................................................1, 5

*In re Alyucan Interstate Corp.*,
12 B.R. 803 (Bankr. D. Utah 1981) ......................................................................19

iii

*In re Batista-Sanchez*,
  493 B.R. 521 (Bankr. N.D. Ill. 2013) ...................................................................20

*In re Bloomingdale Partners*,
  155 B.R. 961 (Bankr. N.D. Ill. 1993) ...................................................................20

*In re Buttermilk Towne Center, LLC*,
  442 B.R. 558 (B.A.P. 6th Cir. 2010)..............................................................14, 24

*In re Cason*,
  190 B.R. 917 (Bankr. N.D. Ala. 1995) .................................................................18

*In re Chatham Parkway Self Storage, LLC*,
  Case No. 02-42153, 2013 Bankr. LEXIS 1955 (Bankr. S.D. Ga. Apr. 25, 2013) .............17, 22

*In re Duval Manor Associates*,
  191 B.R. 622 (Bankr. E.D. Pa. 1996) ...................................................................19

*In re Gould*,
  977 F.2d 1038 (7th Cir. 1992) ...............................................................................5

*In re Homestead Partners, Ltd.*,
  200 B.R. 274 (Bankr. N.D. Ga. 1996) ..................................................................19

*In re Kennedy*,
  177 B.R. 967 (Bankr. S.D. Ala. 1995) ............................................................18, 22

*In re Kilgus*,
  811 F.2d 1112 (7th Cir. 1987) ................................................................................5

*In re Markos Gurnee P'ship*,
  252 B.R. 712 (Bankr. N.D. Ill. 1997) ..............................................................19, 20

*In re NSB Film Corp.*,
  167 B.R. 176 (B.A.P. 9th Cir. 1994)........................................................................6

*In re Pac. Forest Prods. Corp.*,
  335 B.R. 910 (S.D. Fla. 2005) ................................................................................8

*In re Peerless Mfg. Co.*,
  523 F.2d 110 (7th Cir. 1975) ................................................................................23

*In re Quade*,
  496 B.R. 520 (Bankr. N.D. Ill. 2013) .....................................................................7

*In re Smithville Crossing, LLC*,
  No. 11-02573, 2011 Bankr. LEXIS 4605 (Bankr. E.D.N.C. Sept. 28, 2011).........................24

*In re UAL Corp.*,
    360 B.R. 780 (Bankr. N.D. Ill. 2007) ...........................................................................19, 20

*In re Waterworks, Inc.*,
    Case No. 13-82498, Dkt. No. 183 (Bankr. N.D. Ill. March 19, 2014) ....................................18

*J. Catton Farms, Inc. v. First Nat'l Bank of Chicago*,
    779 F.2d 1242 (7th Cir. 1985) .................................................................................................24

*McFarlin v. Conseco Servs., LLC*,
    381 F.3d 1251 (11th Cir. 2004) ........................................................................................8, 9, 10

*Norwest Bank Worthing v. Ahlers (In re Ahlers)*,
    794 F.2d 388 (8th Cir. 1986) ...................................................................................................18

*Putnal v. Suntrust Bank (In re Putnal)*,
    489 B.R. 285 (M.D. Ga. 2013) ..........................................................................................14, 18

*Scherr v. Marriott International Inc.*,
    703 F.3d 1069 (7th Cir. 2013) ...................................................................................................7

*U.S. v. MacDonald*,
    435 U.S. 850 (1978)....................................................................................................................7

*United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*,
    484 U.S. 365 (1988)............................................................................................................15, 16

*Wheaton Oaks Office Partners, Ltd.*,
    27 F.3d 1234 (7th Cir. 1994) ...................................................................................................14

## STATUTES

11 U.S.C. § 362.............................................................................................................................22

11 U.S.C. § 506(a) ..................................................................................................................14, 15

11 U.S.C. § 552(b) .................................................................................................................*passim*

11 U.S.C. § 1121...........................................................................................................................22

28 U.S.C. § 157(a) .........................................................................................................................1

28 U.S.C. § 158(a) .....................................................................................................................1, 4

28 U.S.C. § 1292(b) .......................................................................................................................7

28 U.S.C. § 1334(b) .......................................................................................................................1

**OTHER AUTHORITIES**

FED. R. BANKR. P. 8001(b)...............................................................................................................5

FED. R. BANKR. P. 8003 ...............................................................................................................5, 6

FED. R. BANKR. P. 8004(a), (b) ......................................................................................................5

## STATEMENT OF APPELLATE JURISDICTION

Jurisdiction before the U.S. Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court") with respect to the motions for authority to use cash collateral (the "Cash Collateral Motions") filed by David M. Wolf ("David") (Case No. 13-83572), Donald L. Wolf, Jr. ("Wolf Jr.") (Case No. 13-83571), and Donald L. Wolf, Sr. ("Wolf Sr.")[1] (Case No. 14-81919) was proper pursuant to 28 U.S.C. §§ 157(a) and 1334(b).

However, the Bankruptcy Court's Orders, entered on January 12, 2015, in Case Nos. 13-83572, 13-83571, and 13-81372, at Docket Nos. 264, 275, and 1144 (the "Orders"),[2] respectively, are interlocutory and, as such, are not appealable as of right. *See In re Alchar Hardware*, 730 F.2d 1386, 1388-89 (11th Cir. 1984) (dismissing appeal because in action where "statutory right to adequate protection is unquestioned," bankruptcy court's discretionary determination of adequate protection issue not final and reviewable). Because the Individuals have not requested, nor have they been granted, leave to appeal from the Orders, this Court lacks jurisdiction to hear this appeal. *See* 28 U.S.C. 158(a). Furthermore, because the Individuals have not met the requirements for interlocutory review, this Court should not grant the Individuals' leave to appeal from the Orders and should instead dismiss this appeal.

## STATEMENT OF CASE AND RELEVANT FACTS

Although FirstMerit Bank, N.A. ("FirstMerit") does not agree with all the alleged facts recited by the Individuals in their Opening Brief, most, if not all, of those "facts" have no bearing on the outcome of this appeal. The material facts, all of which are undisputed, are as follows:

As of their petition dates, the Individuals owed FirstMerit over $15 million on direct loans and guaranties of corporate debt. (*See* Opinion, at 2.) This debt to FirstMerit is secured by

---

[1] Together, David, Wolf Jr., and Wolf Sr. are referred to herein as the "Individuals."

[2] The Orders are supported by a memorandum opinion (*see, e.g.*, Dkt. No. 263 in Case No. 13-83572) ("Opinion").

a prepetition mortgage and a separate assignment of rents of the real property located at 10610 Wolf Drive, Huntley, Illinois (the "Property").  (*See id.*)  FirstMerit has a perfected security interest in the Property.  (*See* Op. Brief, at 3.)  FirstMerit also has a separate perfected security interest in the rental income generated by the Property.  (*See id.*)  The loan balance owed to FirstMerit exceeds the value of the Property and that FirstMerit is thus undersecured.  (*See* Opinion, at 3.)  The Individuals seek to use the rental income generated by the Property post-petition (*i.e.*, FirstMerit's "cash collateral") to pay the Individuals' bankruptcy counsel and purported expert witness.  (*See id.* at 2.)  The Individuals' payment of FirstMerit's cash collateral to the Individuals' counsel will "consume" that cash and will not benefit FirstMerit.

## SUMMARY OF ARGUMENT

This appeal is not about a noble undertaking by the Individuals.  It is not about: (1) ensuring that debtors in this District have a meaningful chance to reorganize their debts; (2) granting debtors a "breathing spell" during which to pursue confirmation of a reorganization plan; (3) preserving the adversary system; or (4) the Individuals' supposed prospects for promptly confirming a lawful plan of reorganization.  This appeal is about only one thing: the Individuals' desire to use FirstMerit's cash collateral to fund the Individuals' litigation against FirstMerit.

In addition to the undisputed facts recited above, the Individuals acknowledge that if their proposed use of FirstMerit's cash collateral reduces the value of such collateral, then FirstMerit is entitled to, and the Individuals must provide, "adequate protection" for their proposed diminution of FirstMerit's security interest in the cash collateral.  Confined by the undisputed facts and this legal concession, the Individuals are left with only a few principal arguments, none of which have merit.  **First**, the Individuals argue that the Bankruptcy Court erred in following the recent majority trend of legal authority rather than the dated and now disfavored *In re*

2

*Addison Properties L.P.*, 185 B.R. 766 (Bankr. N.D. Ill. 1995), which erroneously employed the "dual valuation" approach and established the value of cash collateral as of the bankruptcy petition date. **Second**, the Individuals argue that the Bankruptcy Court erred in rejecting the Individuals' proposal to use FirstMerit's own cash collateral to provide adequate protection payments for the decline in FirstMerit's cash collateral. The Individuals' proposal is just as circular as it sounds: FirstMerit already has a security interest in the cash collateral, so giving FirstMerit what it already has does not protect FirstMerit at all.

**Third**, the Individuals argue that the reasoning employed by the Bankruptcy Court may deprive some debtors of certain core protections of bankruptcy and perhaps the ability to reorganize at all. The Opinion does not eliminate any bankruptcy protections, such as the automatic stay or the exclusivity period during which only a debtor may propose and confirm a bankruptcy reorganization plan. In fact, the Individuals enjoyed those protections before the Bankruptcy Court, but have effectively squandered them in favor of strategic delay. As for the ability to reorganize, there is no constitutional or fundamental right to reorganize in bankruptcy, and Congress made the policy decision that protecting a creditor's security interest in cash collateral is more important than permitting a debtor unfettered access to a creditor's cash collateral. **Fourth**, the Individuals argue that the "equities" require that they be allowed to spend FirstMerit's cash collateral. Under binding Seventh Circuit precedent, the so-called "equities exception" does not apply here. In any event, the "equities" do not favor these debtors' desire to spend FirstMerit's cash collateral to litigate with FirstMerit rather than using their own assets, such as Wolf Sr.'s unencumbered luxury, waterfront, million-dollar-plus home in Cape Coral,

3

Florida, to pay their legal bills.  (*See* Exhibit A attached hereto.)[3]  For at least the foregoing reasons, the Court should affirm the Bankruptcy Court's Orders.

Notwithstanding the manifest correctness of the Bankruptcy Court's Opinion, this Court need not, and should not, reach the merits of this appeal.  As noted above, and explained in greater detail below, the Bankruptcy Court's Orders are interlocutory, not final, orders, and this Court thus does not have appellate jurisdiction over this appeal.  Although the Court may construe the Individuals' notice of appeal as a motion for leave, the Court should refuse to do so or, alternatively, refuse to grant the Individuals' leave to pursue this appeal on the merits.  The Individuals have not made the extraordinary showing required to warrant interlocutory review of the Bankruptcy Court's Orders, principally because the Individuals cannot identify a controlling question of law, the resolution of which will materially advance the litigation below.  Accordingly, the Court should dismiss this appeal.

## ARGUMENT

**I.      THE BANKRUPTCY COURT'S ORDERS ARE INTERLOCUTORY, AND THIS APPEAL SHOULD BE DISMISSED.**

This Court has appellate jurisdiction over a ***final*** order entered by a bankruptcy court. *See* 28 U.S.C. § 158(a)(1).  However, this Court has appellate jurisdiction over an ***interlocutory*** order of the bankruptcy court only if this Court exercises its discretion to grant leave to the would-be appellant to pursue such appeal.  *See id.* at § 158(a)(3).  As explained below, the Bankruptcy Court's Orders here are interlocutory, not final, and this Court should not grant leave to the Individuals to pursue this appeal.

---

[3] This same information was provided to the Bankruptcy Court as part of the briefing below.  (*See, e.g.*, Case No. 13-81372, Dkt. No. 1042, at Ex. A.)

### A. The Bankruptcy Court's Interlocutory Orders Are Not Immediately Appealable As Of Right.

The Individuals state, without explanation or citation to any authority, that the Bankruptcy Court's Orders are "final." (Op. Brief, at 1.) Their cursory conclusion is incorrect.

Finality in the bankruptcy context is more flexible than in ordinary civil litigation, in that the entire bankruptcy proceeding need not have been concluded before an order will be final for appeal purposes. *See In re Gould*, 977 F.2d 1038, 1040-41 (7th Cir. 1992); *In re Kilgus*, 811 F.2d 1112, 1116 (7th Cir. 1987). Determinations of adequate protection during the pendency of a bankruptcy case may be interlocutory. *See Alchar Hardware*, 730 F.2d at 1388-89. In the proceedings below, the Bankruptcy Court has considered and resolved cash collateral issues on an interim basis. (*See* Case No. 13-81372, Dkt. Nos. 53, 113, 171, 205, 257, 321, 417, 451, 482, 502, 529, 597, 647, 708, 809, 815, 868, 869, 1038, 1040, 1096, 1095, 1137, 1138, 1184, 1185, 1119, 1121.) No final cash collateral order has been entered with respect to FirstMerit. With respect to the issues specifically related to this appeal, as the Bankruptcy Court explained in its Opinion, "the [Individuals] have not demonstrated that FirstMerit Bank, N.A.'s interest in cash collateral will be adequately protected if it is used to pay the fees of Barrick Switzer, Ronald Javorek or Edward Kling as proposed." (Opinion, at 18.) The Opinion makes clear that the Individuals must provide adequate protection to FirstMerit, but then concludes that the Individuals have not proposed an acceptable form of adequate protection. This conclusion is not a final determination that the Individuals cannot provide adequate protection and thus overcome the defects of their prior motions.

5

**B.**     **The Court Should Dismiss This Interlocutory Appeal Due To The Individuals' Failure To Obtain Leave Of Court.**

To proceed with an appeal from an interlocutory order, an appellant must file a notice of appeal as well as a motion for leave to appeal. *See* FED. R. BANKR. P. 8004(a), (b).[4] Here, the Individuals have not followed this "ordinary and expected procedure" or provided an explanation for why they did not comply with the Federal Rules of Bankruptcy Procedure. *See In re 450 S. Burlington Partners LLC*, No. 09-4097, 2009 U.S. Dist. LEXIS 126750, at *15 (C.D. Cal. Aug. 5, 2009) (quotation omitted). For that reason alone, this appeal should be dismissed.

Additionally, although this Court may construe the Individuals' bare notice of appeal as a motion for leave to appeal or direct that a motion for leave to appeal be filed, *see* FED. R. BANKR. P. 8003(c), the Court should do neither. In *450 S. Burlington*, the court refused to treat a notice of appeal as a motion for leave based on the court's observation that allowing the appeal to proceed "will result in wasted litigation and expense and will not materially advance the ultimate termination of the litigation." 2009 U.S. Dist. LEXIS 126750, at *17 (citing *In re NSB Film Corp.*, 167 B.R. 176, 180 (B.A.P. 9th Cir. 1994)). The same inefficiencies will result from this appeal. The Individuals' bankruptcy cases have been pending for nearly one-and-a-half (1.5) years, and they have not taken any material steps toward reorganizing and emerging from bankruptcy. They have instead used the bankruptcy system to delay repayment of the undisputed debts they owe to FirstMerit and delay foreclosure of the Property in an effort to coerce FirstMerit to release the Individuals from personal guaranties related to certain other bankrupt debtors (the Chardon Debtors).

To that end, the Individuals do not seek authority to use FirstMerit's cash collateral to advance their reorganization efforts—any semblance of a legitimate effort toward a lawful

---

[4] The Federal Rules of Bankruptcy Procedure were recently amended. This requirement was formerly found in Rules 8001(b) and 8003.

reorganization ceased many months ago.[5]  Rather, this appeal is a desperate attempt by the

Individuals and their counsel to use FirstMerit's own cash collateral to fund the Individuals'

wasteful and futile litigation efforts against FirstMerit.  Nothing about this appeal or the relief the

Individuals seek will advance the termination of the underlying bankruptcy cases.  It will

materially increase the already lengthy "breathing spell" the Individuals have had and instead

result in the wasting of legitimate cash collateral that should be paid to FirstMerit, not consumed

for the exclusive benefit of the Individuals and their counsel.  Under such circumstances, the

Court should "decline[] to treat [the Individuals'] notice of appeal as a motion for leave to

appeal."  *Id.*

> ### C. The Individuals Have Not Established And Cannot Establish That The Court Should Grant The Individuals Leave To Pursue This Interlocutory Appeal.

Even if this Court were to construe the notice of appeal as a motion for leave or direct the

Individuals to file a motion for leave, the Individuals cannot carry their burden to establish that

immediate appellate review of the Bankruptcy Court's Orders is warranted.  As a starting point,

interlocutory review of a lower court's order is "generally disfavored."  *U.S. v. MacDonald*, 435

U.S. 850, 853 (1978).  For that reason, district courts exercise their discretion to grant

interlocutory review of bankruptcy court orders only if the order: "(1) involves a controlling

question of law, (2) as to which there is a substantial ground for difference of opinion, and (3) is

such that an immediate appeal would advance the ultimate termination of the litigation."[6]  *In re*

---

[5] The Court can and should take judicial notice of the Bankruptcy Court's docket, from which it is clear that the Individuals have made no progress toward a successful reorganization in many months.  *See In re Quade*, 496 B.R. 520, 524 (Bankr. N.D. Ill. 2013) (court may take judicial notice of the contents of the docket); *see also Scherr v. Marriott International Inc*., 703 F.3d 1069, 1073 (7th Cir. 2013) (same).

[6] This three-part standard is analogous to that set forth in 28 U.S.C. § 1292(b), which governs appeals from district courts to the circuit courts of appeals.  *See, e.g.*, *Brandt v. Leasing One Corp.*, No. 14-C-979, 2014 U.S. Dist. LEXIS 62279, at *7-8 (N.D. Ill. May 6, 2014) (§ 1292(b) standard applicable to interlocutory appeal from bankruptcy proceeding).

*Pac. Forest Prods. Corp.*, 335 B.R. 910, 919 (S.D. Fla. 2005); *450 S. Burlington*, 2009 U.S. Dist.

LEXIS 126750, at *8. As the Eleventh Circuit has explained:

> [T]he legal question must be stated at a high enough level of abstraction to lift the question out of the details of the evidence or facts of a particular case and give it general relevance to *other cases in the same area of law* [and] the answer to that question must substantially reduce the amount of litigation left *in the case*.

*McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004) (emphasis added). The

Individuals cannot satisfy the requirements for interlocutory review.

### 1. No controlling question of law is at issue.

To satisfy this portion of the standard, the Individuals must demonstrate that there is a

question of *law*, and it is *controlling*. *See Ahrenholz v. Bd. of Tr. Of Univ. of Ill.*, 219 F.3d 674,

675 (7th Cir. 2000). This exacting standard requires "a question of 'pure' law, or matters that

can be decided 'quickly and cleanly without having to study the record.'" *McFarlin v. Conseco*

*Services, LLC*, 381 F.3d 1251, 1258, 1260-62 (11th Cir. 2004) (finding that because issues

presented involved application of facts to law, would-be appellant could not prove "controlling

question of law") (quoting *Ahrenholz*, 219 F.3d at 677 (7th Cir. 2000)). Here, the Individuals do

not dispute the validity of FirstMerit's claims or its security interest. Nor do the Individuals

dispute that the rents generated by the Property are "cash collateral" in which FirstMerit has a

"separate and protectable interest."

Rather, the Individuals' appeal focuses primarily on two questions: (1) whether they have

provided adequate protection to FirstMerit in exchange for the proposed (and inevitable)

diminution in the value of FirstMerit's cash collateral that will occur when the Individuals

consume such cash collateral to pay their bankruptcy counsel; and (2) whether a debtor may use

a lender's cash collateral for attorneys' fees and other expenses so long as the underlying real

property is not decreasing in value. The former question is a determination based on facts and

circumstances peculiar to this case with no broad application to other cases, and as such, it does not present a "controlling question of law" that warrants interlocutory review. *See, e.g.*, *McFarlin*, 381 F.3d at 1258, 1260-62 (fact-specific determination does not present "controlling question of law"). The latter question, on the other hand, may be construed as a purely legal question, but as discussed below, it fails the other two prongs of the test for interlocutory review.

### 2. No substantial grounds for difference of opinion exist.

The Individuals argue that they have proposed adequate protection to FirstMerit in the form of cash payments and replacement liens on future rents, collateral in which FirstMerit already has a perfected security interest. (*See* Op. Brief, at 16-18.) The Bankruptcy Court rejected both arguments because the Individuals' proposed cash payments would emanate from FirstMerit's preexisting cash collateral and FirstMerit already has a lien on future rents. (*See* Opinion, at 5-7.) It is axiomatic that attempting to provide adequate protection to a secured creditor from that creditor's own collateral is no protection at all, and the Individuals have not established that a substantial ground for difference of opinion exists with respect to the Bankruptcy Court's conclusion. This question does not warrant interlocutory review.

Furthermore, whatever difference of opinion may have once existed on when to value post-petition rents, that difference of opinion has certainly been resolved. The more recent, better-reasoned decisions relied upon by the Bankruptcy Court and acknowledged by the Individuals have overwhelmingly concluded that valuing such rents as of the petition date reads the protections of Section 552(b) out of the Bankruptcy Code. The Individuals argue against this trending majority and throughout their Opening Brief rely upon the dated and disfavored *Addison Properties*, 185 B.R. 766. However, the mere existence of contrary decisions is not necessarily sufficient to establish substantial grounds for difference of opinion. *See, e.g.*, *Delalla v. Hanover Ins.*, No. 09-2340, 2010 U.S. Dist. LEXIS 2797, at *10-12 (D.N.J. Jan. 14, 2010)

(concluding no substantial difference of opinion where majority of courts reached same conclusion on particular issue); *Carugati v. INA Life Ins. Co.*, No. 97 C 4604, 1997 U.S. Dist. LEXIS 17669, at *9 (N.D. Ill. Nov. 5, 1997) (same). As the Ninth Circuit has explained, "just because counsel contends that one precedent rather than another is controlling does not mean there is a substantial difference of opinion as will support an interlocutory appeal." *Couch v. Telescope, Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (quotation omitted); *see also Bernardi & Assocs. v. I. Kunik Co. (In re Delta Produce)*, No. 12-MC-1164, 2013 U.S. Dist. Lexis 91570, at *9 (W.D. Tex. June 28, 2013). This question also does not warrant interlocutory review.

> **3.   Review of this appeal will not advance termination of this litigation.**

This third prong requires that "resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." *McFarlin*, 381 F.3d at 1259. Resolution of this appeal will not materially advance the termination of the underlying bankruptcy litigation. The Individuals have had nearly eighteen (18) months in which to propose and confirm a plan of reorganization, but they have failed to do so. They have instead opted for delay in hopes of strong-arming FirstMerit into waiving its legitimate and undisputed rights against the Individuals. The Individuals seek access to FirstMerit's cash collateral to pay their counsel to extend, not resolve, the Individuals' litigation against FirstMerit. This Court's consideration of this appeal will result in either: (1) an affirmance of the Bankruptcy Court's Orders, in which instance nothing in the underlying litigation will change; or (2) reversal of the Bankruptcy Court's Orders, in which instance the Individuals will have a "slush fund" with which to continue their protracted, wasteful bankruptcy litigation. With either result, a

conclusion of the underlying litigation will be no closer.  Indeed, the latter result promises to extend the litigation significantly.[7]  Accordingly, the Individuals cannot satisfy this requirement.

In summary, because the Individuals cannot establish each of the requirements for interlocutory review, this Court should not grant leave to the Individuals to pursue this appeal.

## II.    SHOULD THE COURT CONSIDER THIS APPEAL, IT SHOULD AFFIRM THE BANKRUPTCY COURT'S ORDERS.

The central issue in this appeal is best summarized as whether a debtor in bankruptcy may use a secured creditor bank's own collateral to finance the debtor's litigation against that very same bank.  The Individuals argue unpersuasively that bankruptcy debtors have an unconditional and absolute right to utilize a bank's cash collateral in order to fund the debtors' reorganization efforts and disputes with the bank.  As explained below, the Individuals' position runs contrary to both law and policy.  The Bankruptcy Code strikes a necessary and appropriate balance between protecting a secured creditor's interest in cash collateral and permitting a debtor to use cash collateral either: (1) to preserve the present value of the property from which such cash collateral is generated; or (2) in circumstances where the secured creditor's security interest is adequately protected by other collateral.  As a result, and as explained in greater detail below, the Bankruptcy Court's Opinion and Orders honor the Bankruptcy Code.  This Court should affirm.

### A.    The Bankruptcy Code Preserves FirstMerit's Undisputed Security Interest In Cash Collateral (Rental Proceeds) From The Property, And FirstMerit Is Entitled To Adequate Protection.

It is undisputed that FirstMerit holds a valid security interest in rental income derived from the Property.  (*See* Opinion, at 7.)  It is further undisputed that the Bankruptcy Code

---

[7] If the Individuals had a legitimate desire to emerge from bankruptcy in short order, they would have taken some affirmative step toward confirmation of a reorganization plan at some point in time in the past several months.  They have not.

11

preserves FirstMerit's interest notwithstanding the Individuals' bankruptcy filings and requires

that the Individuals provide FirstMerit with "adequate protection." The relevant Bankruptcy

Code provisions are as follows.

> Bankruptcy Code Section 552(b)(2) provides, in pertinent part, that:
>
> [I]f the debtor and an entity entered in to a security agreement before commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to amounts paid as rents of such . . ., then such security interest extends to such rents . . . acquired by the estate after the commencement of the case to the extent provided in such security agreement, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b)(2). The post-petition rents addressed in Section 552 fall within the definition

of "cash collateral" set forth in Section 363(a). *See id.* at § 363(a). A debtor may not use "cash

collateral" in which a creditor has an interest unless either the creditor consents or the

bankruptcy court authorizes the use in accordance with Section 363. *See id.* at § 363(c)(2). A

court may only authorize the use of cash collateral over the secured creditor's objection if the

secured creditor's interest in such cash collateral is "adequately protected." *See id.* at § 361.

Here, FirstMerit has not consented to the Individuals' use of FirstMerit's cash collateral

to pay the Individuals' counsel.[8] As a result, the Individuals must provide "adequate protection"

to FirstMerit before the Bankruptcy Court could authorize the Individuals' use of FirstMerit's

cash collateral.

### B. The Bankruptcy Court Correctly Utilized An Approach To Valuing Cash Collateral That Recognizes FirstMerit's Interest In Post-Petition Rents.

The Bankruptcy Court correctly rejected the Individuals' argument that FirstMerit is

adequately protected because FirstMerit's cash collateral should be valued as of the bankruptcy

---

[8] FirstMerit has repeatedly consented to use of its cash collateral for legitimate operating expenses and maintenance related to preservation of the Property.

petition date. The Individuals argue on appeal that the Bankruptcy Court should have utilized the so-called "dual valuation" approach in order to value FirstMerit's cash collateral for purposes of adequate protection. (*See* Op. Brief, at 9-16.) For the reasons that follow, the Individuals' various arguments lack merit.

> **1.    The Bankruptcy Court correctly rejected the "dual valuation" approach in favor of an approach that correctly recognizes the existence of post-petition cash collateral.**

The "dual valuation" approach, which, as relevant here, proposes valuing a secured creditor's interest in cash collateral generated from post-petition rents as of the petition date, is flawed. The Bankruptcy Court properly refused to apply the dual valuation approach and correctly recognized that FirstMerit has an undisputed interest in cash collateral and that the Individuals' consumption of such cash collateral to pay their counsel will constitute a diminution in value that entitles FirstMerit to adequate protection.

The Individuals nonetheless urge this Court to reverse the Bankruptcy Court's Opinion and Orders, which reject the dual valuation approach adopted in *Addison Properties*, 185 B.R. 766. (*See* Op. Brief, at 7-10, 12-13, 15-16, 18-21.) The Individuals' heavy reliance on *Addison Properties* is misplaced. The *Addison Properties* decision and its dual valuation approach conflict with express provisions of the Bankruptcy Code. The dual valuation approach adheres to the view that for "purposes of adequate protection, the claim of the secured creditor is fixed as of the date of filing [and although] Section 552(b) proceeds increase the collateral securing that claim, [they] do not increase the claim for purposes of adequate protection." *Id.* at 784. In other words, the secured creditor's interest is to be valued as of the petition date. But as the Bankruptcy Court's Opinion correctly recognizes, (Opinion, at 14), post-petition rents in which a secured creditor retains its security interest by way of Section 552(b)(2) includes only proceeds that accrue post-petition: ". . . such security interest extends to such rents . . . acquired by the

estate *after the commencement of the case*." 11 U.S.C. § 552(b)(2) (emphasis added). If a court values a secured creditor's interest in future rents only as of the petition date, there will never be future rents and the value will always be zero (0). In other words, the value of the post-petition rents will never decline post-petition, and the secured creditor will never receive adequate protection while the debtor spends those post-petition rents for any purpose without protection or compensation to the secured creditor.

The foregoing result eviscerates the secured creditor's interest in, and right to preservation of, accruing post-petition cash collateral. The Individuals argued below that they may use FirstMerit's cash collateral so long as the Property was not decreasing in value. (*See* Opinion, at 10.) This argument, however, ignores the numerous decisions that have recognized that a secured creditor with liens on both real property and rents has a separate and protectable interest in both the real property and the rents after the bankruptcy petition is filed. *See, e.g.*, *Wheaton Oaks Office Partners, Ltd.*, 27 F.3d 1234, 1240 (7th Cir. 1994); *In re Buttermilk Towne Center, LLC*, 442 B.R. 558, 566-67 (B.A.P. 6th Cir. 2010); *Federal Nat'l Mortgage Ass'n v. Dacon Bolingbrook Assocs. Ltd. P'ship*, 153 B.R. 204, 212 (N.D. Ill. 1995) (secured creditor "possesses a distinct, additional interest in the [r]ents which must be adequately protected from a reduction in value under section 363(e)"); *Putnal v. Suntrust Bank (In re Putnal)*, 489 B.R. 285, 290-91 (M.D. Ga. 2013). The Individuals offer no contrary authority or argument.

The Individuals argue further that the dual valuation approach is mandated by Bankruptcy Code Section 506(a), but their contrived and confusing argument fails. Section 506(a) provides that a secured creditor's allowed claim is to be divided into: (1) a secured claim to the extent of the value of the collateral securing such claim; and (2) an unsecured claim to the extent the claim exceeds the collateral's value. *See* 11 U.S.C. § 506(a).

14

Section 506(a) also provides that "such value shall be determined . . . in conjunction with any hearing on such disposition [of the collateral] or use or on a plan affecting such creditor's interest." *Id.* The Individuals assert that because Section 506(a) expressly provides instructions on when to value the property for determining the secured and unsecured portions of an allowed claim, and Section 361 (adequate protection) provides no such instructions, that Section 361 must require valuation as of the petition date. As even *Addison Properties* recognized:

> Although the language and legislative history of Section 506(a) . . . require that valuation of a secured claim for purposes of confirmation take place in conjunction with the confirmation hearing, ***there is no similar directive as to when claims should be valued for adequate protection purposes***.

185 B.R. at 779 (emphasis added). In other words, Section 506(a) and its requirement for valuation of an "allowed claim" have nothing at all to do with valuation of "cash collateral" for purposes of adequate protection.

The Individuals' next flawed argument asserts that the "continuous valuation" approach is inconsistent with the Supreme Court's decision in *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1988). (*See* Op. Brief, at 11-14.) *Timbers* has no application to the question whether FirstMerit is adequately protected here. In *Timbers*, the Supreme Court considered whether a secured creditor is entitled to post-petition interest payments in order to compensate the secured creditor for its loss of the "right (suspended by the [automatic] stay) to take immediate possession of the [collateral]." *Id.* at 371. Stated differently, the petitioner in *Timbers* asserted that it must be compensated for the "use value" of the collateral (there, real property) because, absent a bankruptcy, it would have been entitled to foreclose on the property. The Supreme Court rejected that argument. *Id.* at 371-376. Whether a secured creditor is entitled to payment for the attendant delay in its ability to foreclose is distinct from whether a debtor should be permitted to spend cash collateral without offering the

15

secured creditor adequate protection. As the Individuals' primary authority even explained, "*Timbers* is limited to defining the extent of adequate protection arising from the delay in foreclosure rights imposed by the automatic stay." *Addison Properties*, 185 B.R. at 779.[9]

Furthermore, the Bankruptcy Court correctly rejected the Individuals' argument, renewed here (Op. Brief, at 12-13), that a continuous valuation approach will result in an unfair "ratcheting effect." (Opinion, at 11-12.) This alleged "ratcheting," so the argument goes, occurs because every increase in the asset value above the prior highest value requires adequate protection. *See Addison Properties*, 185 B.R. at 780-81. This ratcheting may be a legitimate concern in cases involving stocks, jewels, or other assets subject to swings in value based on market forces, but rental income, like that in which FirstMerit has an interest here, is positive and not variable. (*See* Opinion, at 11.) The Bankruptcy Court's observation means simply this: it is unrealistic to think that a debtor who has rental income will ever receive "negative" rent.

The Individuals attempt to counter this truism with a chart that reflects changes in net income from one month to the next. (*See* Op. Brief, at 13.) First, the chart reflects positive rental income every single month, which means that FirstMerit's cash collateral has increased every single month. Not one month in the chart reflects a negative rental income (which would defy common sense). Second, the fact that operating expenses may exceed rental income in some months—which may result in a sporadic decrease in the value of FirstMerit's cash collateral—does not result in a ratcheting effect. Those sporadic decreases reflected on the chart do not, in and of themselves, require adequate protection, because the payment from cash collateral for basic building operating expenses protects and preserves the value of the

---

[9] The Individuals state that "[t]he Decision, however, demands the exact 'similarity of outcome' between Adequate Protection and Confirmation despite *Timbers* [sic] express prohibition." (Op. Brief, at 12.) No explanation of this confusing statement is provided.

16

underlying real property.  *See, e.g.*, *In re Chatham Parkway Self Storage, LLC*, Case No. 02-42153, 2013 Bankr. LEXIS 1955, at *12-13 (Bankr. S.D. Ga. Apr. 25, 2013) (adequate protection afforded by use of cash collateral for expenses "directly related to the operation, maintenance, or preservation" of the real property).  It is the Individuals' proposed use of cash collateral for purposes other than operations and maintenance of the Property that triggers the requirement that they provide FirstMerit with additional adequate protection.

The Individuals' also assert that FirstMerit's interest in cash collateral is protected in two ways under the dual valuation approach.  (*See* Op. Brief, at 16.)  First, they argue that an increase in cash collateral results in an increase in FirstMerit's secured claim pursuant to Sections 506 and 552.  This argument ignores the fact that the Individuals' expenditure of cash collateral to pay their counsel consumes and destroys that cash, thus diminishing FirstMerit's cash collateral. It may not be possible to undo that harm.  *See, e.g.*, *Dahlquist v. First Nat'l Bank*, 737 F.2d 733, 735 (8th Cir. 1984) (dismissing appeal of cash collateral order because $60,000 debtors were authorized to use had already been spent).  This risk looms large here, where the Individuals have not proposed any measure of legitimate protection to FirstMerit for the diminution in its cash collateral that will occur—and occur rapidly—once the Individuals' counsel are able to lay hands on FirstMerit's cash collateral.  Second, the Individuals argue that FirstMerit is protected by the fact that the Individuals cannot use cash collateral to the extent it will result in a decline in the petition date value of the collateral.  As explained above, the petition date value of post-petition rents is, by definition, zero (0).  Thus, this "protection" is imaginary.

> **2.** **A majority of recent decisions have rejected the valuation approach espoused by the Individuals.**

The Individuals incorrectly argue that the Bankruptcy Court's Opinion reflects the minority view on the issues of adequate protection for use of cash collateral.  (*See* Op. Brief, at

17

20-22.)  As the Bankruptcy Court correctly observed, a majority of recent cases have rejected the Individuals' argument that they can use FirstMerit's cash collateral to pay their counsel so long as the Property underlying the cash collateral is not depreciating in value.  (Opinion, at 15.)  As the court explained in *Putnal*, the dual valuation theory discussed in *Addison Properties* "has not been widely adopted."  489 B.R. at 291.  Rather, "the weight of authority holds that a creditor's interest in rents is separate from its interest in the land and corresponds to the amount of rents that accrue."  *Id.* at 288; *see also id.* at 289 (most courts addressing this issue conclude value of interest measured by actual rents that have accrued or will accrue) (collecting cases).

Indeed, the Individuals themselves cite several decisions that post-date *Addison Properties* and follow the continuous valuation approach.  (*See* Op. Brief, at 21.)  That is not to say, of course, that the Individuals' list of such cases is exhaustive.  *See, e.g.*, *In re Waterworks, Inc.*, Case No. 13-82498, Dkt. No. 183 (Bankr. N.D. Ill. March 19, 2014) (denying debtor's request to use cash collateral to pay professionals based on lack of evidence that secured creditor would be adequately protected); *In re Cason*, 190 B.R. 917, 929-31 (Bankr. N.D. Ala. 1995) (rejecting *Addison Properties* because, *inter alia*, "if the Court refused to acknowledge changes in value from the petition forward, there would never be the need for adequate protection") (superseded on other grounds by statute).

Moreover, the Individuals' string citation (Op. Brief, at 21-22) of supposed "dual valuation" cases, almost all of which pre-date the cases relied upon by the Bankruptcy Court by over a decade, is both cumbersome and also incorrect.  For example, *In re Kennedy*, 177 B.R. 967, 970-72 (Bankr. S.D. Ala. 1995), is a Chapter 13 case discussing valuation for plan confirmation purposes and does not state that cash collateral should be valued for adequate protection purposes as of the petition date.  *Norwest Bank Worthing v. Ahlers (In re Ahlers)*, 794

18

F.2d 388, 396 (8th Cir. 1986), acknowledges that valuation as of the petition date is not appropriate in all instances. *In re Homestead Partners, Ltd.*, 200 B.R. 274, 281 (Bankr. N.D. Ga. 1996), and *In re Duval Manor Associates*, 191 B.R. 622, 633-34 (Bankr. E.D. Pa. 1996), concerned whether post-petition payments reduce the secured portion of the secured creditor's claim, not whether post-petition rents should be valued as of the petition date. *In re Alyucan Interstate Corp.*, 12 B.R. 803, 812 n.18 (Bankr. D. Utah 1981) (emphasis added), merely made an observation that discussed petition-date valuation hypothetically: "***If*** the value of interest in property at the date of the petition is the benchmark . . . ." Contrary to the Individuals' misleading parenthetical (Op. Brief, at 22), in *In the Matter of Mulcahy*, 5 B.R. 558, 563 (Bankr. D. Conn. 1980), the court did not offer any conclusion at all regarding the appropriate date for valuation of collateral for adequate protection purposes. Finally, a single bankruptcy judge authored *Addison Properties*, 185 B.R. 766, *In re UAL Corp.*, 360 B.R. 780, 785 (Bankr. N.D. Ill. 2007), and *In re Markos Gurnee P'ship*, 252 B.R. 712, 717 (Bankr. N.D. Ill. 1997), so those three decisions do not reflect the view of a majority of courts.[10]

To bolster their incorrect argument that the Bankruptcy Court's Opinion departs from well-established law, the Individuals argue that a split exists among the Eastern and Western Divisions of the Northern District of Illinois with respect to valuation of cash collateral. (*See* Op. Brief, at 7.) The Individuals' argument, irrelevant as it is, is wrong. The Individuals cite three cases from the Eastern Division in support of their argument, (*see* Op. Brief, at 7), but only one of them, *Addison Properties*, supports the Individuals' proposed valuation approach. In *In*

---

[10] Several of the other decisions cited by the Individuals have nothing to do with the valuation of collateral, particularly post-petition rents, for purposes of adequate protection. In fact, many of the decisions discuss the value of the creditor's allowed claim and how to determine the secured and unsecured portions of that claim, which discussion is not controlling on when collateral should be valued for adequate protection purposes.

19

*re Batista-Sanchez*, the court did not mention "dual valuation" or "continuous valuation." 493

B.R. 521 (Bankr. N.D. Ill. 2013). In fact, the court's decision contains no analysis of the issue

before this Court. In *In re Colts Run, L.L.C.*, the court had previously determined the value of

the property at issue to be nearly $24 million, and the debtor came forward with evidence that the

combined value of its assets was over $24.5 million. No. 10-18071, Dkt. Nos. 286 and 310

(N.D. Ill. July 20, 2011). The bank's secured claim, however, was only $23.1 million. The one

page order entered by the court says nothing about "dual valuation" or "continuous valuation,"

and it is certainly feasible that the court authorized the use of cash collateral to pay professional

fees in that case because the bank was oversecured and was adequately protected by the $1.4

million equity cushion. In other words, *Colts Run* bears no similarity to this case, where

FirstMerit is indisputably undersecured. (*See* Opinion, at 3, 6.)

Moreover, *Addison Properties* is not even the leading case from the Eastern Division. In

*Federal Nat'l Mortgage Ass'n*,[11] the district court rejected the bankruptcy court's conclusion that

a secured creditor is not entitled to adequate protection for the debtor's use of post-petition rents

for purposes other than operating and maintaining the property. 153 B.R. at 211-12. The

bankruptcy court had erroneously concluded that in bankruptcy, a secured creditor's interest in

post-petition rents is no greater than an interest in the real property itself. *Id.* That incorrect

conclusion is the functional equivalent of the bankruptcy court's incorrect conclusion in *Addison

Properties*, because valuing a secured creditor's interest in post-petition rents as of the petition

date will always result in that value being zero (0). Lastly, the Individuals also neglect to

mention *In re Bloomingdale Partners*, 155 B.R. 961 (Bankr. N.D. Ill. 1993), which is cited on

Page 16 of the Opinion. In *Bloomingdale*, the court observed that "[t]his entitlement [to an

---

[11] In *Federal National Mortgage Association*, the district court overruled Judge Wedoff, who authored *Addison Properties*, *UAL Corp.*, and *Markos Gurnee*.

additional interest in estate property that only accrues post-petition (*i.e.*, post-petition rents)] only can have meaning if the determination of the creditor's security interests occurs post-petition." *Id.* at 976. As explained, the Individuals' assertion that an irreconcilable split exists among the Eastern and Western Divisions of this District is simply untrue.

> ### 3. Contrary to the Individuals' rote speculation, the Bankruptcy Court's Opinion does not violate any policy concerns.

The Individuals assert that the Bankruptcy Court's Opinion violates important policy concerns, (*see* Op. Brief, at 18-20), but their assertion fails.

The Individuals first assert that the continuous valuation approach "will completely deprive the vast number of Chapter 11 debtors of any meaningful chance of reorganization." (Op. Brief, at 18.) *First*, the Individuals provide no general or specific evidence of this point. It is an allegation; nothing more. *Second*, the Individuals' bankruptcy cases have been pending for nearly one-and-a-half (1.5) years, and they have repeatedly declared that they have a successful chance at reorganization. (*See, e.g.*, Appellee's Response Brief, *FirstMerit Bank, N.A. v. Wolf*, No. 14-50338 (N.D. Ill.), at Dkt. No. 23, pp. 9-11, 14-17; Op. Brief, at 23.) So, according to the Individuals, they have not been deprived of a chance to reorganize. *Third*, the policy choice to be made between protecting a secured creditor's interest in cash collateral, such as post-petition rents, and permitting a debtor to use such funds to finance its reorganization efforts is one for Congress. Congress made that choice by enacting Bankruptcy Code Section 552(b).

*Fourth*, the Individuals go too far by arguing that any single-asset debtor or debtor who gives a creditor blanket liens "will be completely unable to finance its debtor-in-possession operations without the consent of the secured creditor." (Op. Brief, at 19.) As noted above, (*see supra*, at 16-17), even if all of the debtor's assets are subject to perfected security interests, the payment of operating expenses from cash collateral is permissible because such payment itself

21

constitutes adequate protection. *See, e.g.*, *Chatham Parkway*, 2013 Bankr. LEXIS 1955, at *12-13 (adequate protection afforded by use of cash collateral for expenses "directly related to the operation, maintenance, or preservation" of the real property). Courts routinely permit this (and secured creditors routinely consent to legitimate expenses in any event). The Individuals do not seek the ability to pay legitimate operating expenses related to the Property; they seek to fund their litigation and efforts at delay with respect to FirstMerit from FirstMerit's own cash collateral. *Finally*, even if the Opinion would have the effect of denying some debtors access to cash collateral to pay their counsel, the Individuals do not cite any authority for their implicit suggestion that entities or individuals have a constitutional or fundamental right to reorganize. No such right exists, so the possible hindrance of that right is irrelevant.

The Individuals also complain that the Opinion will strip debtors of important bankruptcy protections, such as the automatic stay and the exclusive period in which only the debtor may propose and confirm a plan, and result in increased administrative burdens on account of repeated valuations. (*See* Op. Brief, at 19-20.) These complaints ring hollow. Nothing about the Opinion alters Bankruptcy Code Section 362 and its automatic stay—it is automatic. Nor does the Opinion alter the exclusivity period that is afforded to debtors under Bankruptcy Code Section 1121. Most importantly, the Individuals' gripes fall flat because the Individuals have already enjoyed the various protections that they argue are unavailable if they cannot use FirstMerit's cash collateral to fight with FirstMerit. As for the need for multiple valuations, that has not occurred here, and the Individuals provide no evidence that it has occurred in other cases. In any event, as observed in *Kennedy*, 177 B.R. at 973, a case relied upon by the Individuals (Op. Brief, at 21), "[t]he added time for several valuations is usually measurable in minutes not hours. . . . [T]he added work argument is a red herring."

Contrary to the Individuals' assertions, the policy concerns in most cases will weigh heavily in favor of preventing debtors from using a secured creditor's cash collateral to pay the debtors' counsel. The "American Rule" requires that litigants pay their own way. *See Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010). Nothing about bankruptcy alters this well-established part of American jurisprudence. *See In re Peerless Mfg. Co.*, 523 F.2d 110, 113 (7th Cir. 1975) (citation omitted). Additionally, if a debtor is able to fund its reorganization or litigation efforts with someone else's money, little incentive exists for the debtor to act rationally, appropriately, and promptly in its reorganization efforts. It is not difficult to imagine the potential for abuse that would accompany handing a debtor someone else's wallet to fund the debtor's litigation.

**C.    The Bankruptcy Court Correctly Determined That The Adequate Protection Proposed By The Individuals Was Illusory.**

The Bankruptcy Court correctly rejected the Individuals' argument that FirstMerit would be adequately protected by periodic cash payments or a replacement lien. The cash payments that the Individuals proposed to make were to originate from FirstMerit's own cash collateral. So, for every dollar that the Individuals consumed of that cash collateral, they would pay FirstMerit a dollar from the same cash collateral. Such an approach, which would simply further deplete FirstMerit's cash collateral, plainly offers no protection. The replacement lien that the Individuals proposed to give to FirstMerit was likewise illusory. FirstMerit indisputably has a perfected security interest in post-petition rents. In exchange for use of cash collateral, the Individuals proposed providing FirstMerit with a replacement lien in those same post-petition rents. Offering to give FirstMerit something that it already has does not protect against the diminution of its collateral in the Individuals' hands. The Bankruptcy Court correctly rejected the Individuals' position. (*See* Opinion, at 5-7.)

23

Other courts have rejected similar proposals. For example, in *Buttermilk Towne Center*, the debtor sought to use an undersecured lender's cash collateral (in the form of post-petition rents) to pay the debtor's professional fees. The bankruptcy court approved the debtor's request over the lender's objection. On appeal, the bankruptcy appellate panel for the Sixth Circuit concluded that a replacement lien in future rents did not provide adequate protection because the lender's already existing lien, preserved under Section 552(b), already covered those same rents. *Id.* at 566-67; *see also In re Smithville Crossing, LLC*, No. 11-02573, 2011 Bankr. LEXIS 4605, at *31 (Bankr. E.D.N.C. Sept. 28, 2011) (collecting cases and concluding "[v]irtually every case addressing the [replacement lien] issue has held that the proffer of a replacement lien on post-petition rents is illusory by virtue of section 552(b) of the Bankruptcy Code").

### D. The Bankruptcy Court Correctly Determined That The "Equities Of The Case" Exception Does Not Apply Here.

The Individuals' argument that the Bankruptcy Court erred by not applying the "equities of the case" exception in Bankruptcy Code Section 552(b) also fails. As the Seventh Circuit has stated, and the Bankruptcy Court followed (Opinion, at 8), the "equity exception is meant for the case where the trustee or debtor in possession uses other assets of the bankrupt estate (assets that would otherwise go to the general creditors) to increase the value of the collateral." *J. Catton Farms, Inc. v. First Nat'l Bank of Chicago*, 779 F.2d 1242, 1247 (7th Cir. 1985). The Individuals do not and cannot argue that they have used other unencumbered assets of their estates to increase the value of FirstMerit's collateral. As a result, the equity exception does not apply here.

The Individuals also assert that the exception is meant to "balance[e] the protection of secured creditors against the public policies favoring continuation of jobs, preservation of going concern values, and the rehabilitation of distressed debtors." (Op. Brief, at 22.) The Bankruptcy

Court considered and properly rejected that assertion here. (*See* Opinion, at 9.) The debtors here are Individuals who have no employees or going concern value.

The Individuals' final argument on this point is that FirstMerit's cash collateral should be used to fund the Individuals' litigation against FirstMerit (and the Individuals' bankruptcy cases generally) in order to preserve the adversary system. As noted above, this argument flies in the face of the "American Rule," pursuant to which litigants fund their own litigation expenses. The Individuals do not cite a single on-point authority that supports a departure from the American Rule here. Furthermore, the Individuals' claim that they have no unencumbered assets with which to fund their reorganization efforts is irrelevant and incorrect. FirstMerit and its cash collateral are not a safety net for the poor strategic decisions and wasteful use of resources by the Individuals and their counsel. The Individuals could, and ***should***, have proceeded expeditiously to plan confirmation. That the Individuals cannot propose a confirmable plan is certainly no reason to provide them with license to spend FirstMerit's cash collateral in what inevitably would entail further delay and waste. Moreover, Wolf Sr. owns an unencumbered luxury, waterfront home in Cape Coral, Florida that is worth over one million dollars.[12] (*See* Exhibit A attached hereto.) If the Individuals wish to continue pursuing their reorganization (and truly believe in their prospects of reorganizing), then Wolf Sr. can obtain litigation financing using the home as collateral or sell the home in favor of more modest accommodations. The "equities" do not favor these debtors.

## CONCLUSION

For the foregoing reasons, this Court should affirm the Bankruptcy Court's Orders.

---

[12] Florida law provides a debtor in bankruptcy with the option to claim an unlimited exemption in her or his homestead. *See Havoco of Am., Ltd. v. Hill*, 197 F.3d 1135, 1140 n.8 (11th Cir. 1999). Wolf Sr. has opted to claim that exemption, which means that his Cape Coral home is beyond the reach of his creditors.

Dated: March 27, 2015                    Respectfully submitted,

                                          FirstMerit Bank, N.A.,

                                          By:   /s/ M. Ryan Pinkston
                                                One of Its Attorneys

                                          Gus A. Paloian (06188186)
                                          M. Ryan Pinkston (6297427)
                                          Christopher J. Harney (6296683)
                                          SEYFARTH SHAW LLP
                                          131 South Dearborn Street, Suite 2400
                                          Chicago, Illinois 60603-5577
                                          Telephone: (312) 460-5000
                                          Facsimile: (312) 460-7000
                                          E-mail:gpaloian@seyfarth.com
                                                 rpinkston@seyfarth.com
                                                 charney@seyfarth.com

                                          *Counsel for Appellant FirstMerit Bank, N.A.*

19530711v.1

# **EXHIBIT A**

2534 El Dorado Pkwy W, Cape Coral, FL 33914 - Zillow    Page 1 of 4

≡ MENU   Homes ⌄   Rentals ⌄   Mortgages ⌄   Agents ⌄   Advice ⌄   Local ⌄   Home design ⌄   More ⌄    Sign in or Join   Advertise

CORRECT HOME FACTS   ♡ SAVE   GET UPDATES   REPORT HOME   MORE ▾    City, State, or Zip 🔍

Florida · Cape Coral · 33914 · 2534 El Dorado Pkwy W

### GET A PROFESSIONAL ESTIMATE

**Ann M. Stone P.A.** PREMIER AGENT
GRI,CIPS
★★★★★ (66)
36 Recent sales
(239) 443-4705

**Chris Porter** PREMIER AGENT
★★★★☆ (9)
36 Recent sales
(239) 829-5249

**Lisa Petruska** PREMIER AGENT
★★★★★ (12)
11 Recent sales
(239) 244-3649

👤 Your Name

📞 Phone

✉ Email

I own this home and would like a professional estimate at 2534 El Dorado Pkwy W, Cape Coral, FL 33914

Contact Agent

Learn how to appear as the agent above

TWO-BEDROOM, SINGLE STORY LUXURY CONDOS
Find The Epcon Community Nearest You
EPCON Communities

# 2534 El Dorado Pkwy W
## Cape Coral, FL 33914

**4 beds · 3.5 baths · 3,091 sqft**

**OFF MARKET**
Zestimate®: $1,060,565
Rent Zestimate®: $3,702/mo
Est. Refi Payment
**$3,994/mo** 🏠 ⌄
See current rates on Zillow
Want Your Current Equifax Credit Score?

This 3091 square foot single family home has 4 bedrooms and 3.5 bathrooms. It is located at 2534 El Dorado Pkwy W Cape Coral, Florida.

### FACTS
- Lot: 0.29 acres
- Single Family
- Built in 2005
- Cooling: Central
- Heating: Forced air
- Last sold: May 2004 for $455,000

### FEATURES
- Parking: Garage - Attached, 778 sqft
- Pool

More ⌄      County website   See data sources

### Similar Homes for Sale

**FOR SALE**
$998,900
3 beds, 4.0 baths, 3639 s...
2516 El Dorado Pkwy W,... | 2516 El Dorado Pkwy W, Cape Coral, FL 33914

**FOR SALE**
$929,000
4 beds, 3.5 baths, 2980 s...
2409 Sagramore Pl, Cap... | 2409 Sagramore Pl, Cape Coral, FL 33914

**FOR SALE**
$750,000
4 beds, 4.0 baths, 3534 s...
5418 SW 24th Pl, Cape C... | 5418 SW 24th Pl, Cape Coral, FL 33914

See listings near 2534 El Dorado Pkwy W

## Zestimate Details

Add owner estimate

**Zestimate** ⓘ
$1,060,565
+$11,193 Last 30 days
$764K — $1.36M
Zestimate range

**Rent Zestimate** ⓘ
$3,702/mo
+$187 Last 30 days
$1.7K — $7.4K
Zestimate range

**Zestimate forecast**
$XXX,XXX
🔒 Show Zestimate forecast
Create a free account
One year

Zestimate ▾      1 year | 5 years | 10 years

This home --
33914 --
Cape Coral --

2534 El Dorado Pkwy W - Google Maps



2534 El Dorado Pkwy W - Google Maps

2534 El Dorado Pkwy W

Street View · Search nearby



Imagery ©2014 TerraMetrics, Map data ©2014 Google    2 mi

## <u>CERTIFICATE OF SERVICE</u>

       M. Ryan Pinkston, an attorney, hereby certifies that on March 27, 2014, he caused a true and correct copy of **Appellee's Response Brief** to be served, via the Court's CM/ECF electronic noticing system upon all properly registered parties participating in these proceedings, and via U.S. mail, postage prepaid, upon each of the parties set forth below.

United States Trustee
Office of the United States Trustee
219 South Dearborn Street, Suite 873
Chicago, IL 60604

Jeffrey P. Allsteadt
U. S. Bankruptcy Court
219 South Dearborn Street
Chicago, IL 60604

Thomas M. Lynch
United States Bankruptcy Court
Northern District Of Illinois
327 South Church St., Chambers 3100
Rockford, IL 61101

/s/ M. Ryan Pinkston